OPINION
{¶ 1} Defendant-Appellant, Justin Messmer, appeals the judgment of the Wyandot County Court of Common Pleas, Juvenile Division, adjudicating him a delinquent child, committing him to the Ohio Department of Youth Services ("DYS"), and classifying him as a juvenile sex offender. On appeal, Messmer asserts that his admission to gross sexual imposition was not entered knowingly, voluntarily, and intelligently; that the juvenile court erred when it classified him as a juvenile sex offender at the time of disposition instead of upon his release from custody; that the juvenile court had no statutory authority to adjudicate him a delinquent child; that the juvenile court erred when it applied Senate Bill 10 to him; and, that the retroactive application of Senate Bill 10 violates the ex post facto clause. Finding that the juvenile court failed to comply with Juv. R. 29(D)(2), we reverse the judgment of the juvenile court.
 {¶ 2} In August 2007, the Upper Sandusky Police Department filed a complaint alleging Messmer was a delinquent child on one count of gross sexual imposition in violation of R.C. 2907.05(A)(4) and 2152.02(F), a felony of the third degree if committed by an adult. The complaint arose from allegations that Messmer had sexual contact with his eight year-old sister.
 {¶ 3} On September 4, 2007, the juvenile court held an arraignment hearing, at which Messmer appeared without counsel and unaccompanied by either *Page 3 
parent. At the hearing, the juvenile court advised Messmer of his right to counsel, appointed him counsel, and advised him of potential penalties, such as commitment to DYS, if he admitted to or was found guilty of the allegation. Additionally, the juvenile court advised him that, if he denied the allegation, he would have a hearing at which his attorney could question witnesses against him, at which he could subpoena and bring his own witnesses, and at which he would have the right to remain silent. Finally, the juvenile court informed Messmer that he could be classified as a sex offender. The juvenile court then entered a denial of the allegation on Messmer's behalf.
 {¶ 4} On October 23, 2007, the juvenile court held an adjudication and change of plea hearing, at which Messmer appeared with appointed counsel and accompanied by both parents. At the hearing, the juvenile court inquired of Messmer whether anyone coerced him to admit the allegation and whether he was satisfied with his counsel. Then, the juvenile court inquired whether Messmer remembered the court's prior advisement about potential consequences if he entered an admission. When Messmer advised that he did not remember, the juvenile court informed him of the potential penalties, such as admission to DYS, if he admitted to or was found guilty of the offenses, and informed him that the court would hold a sex offender designation hearing, at which he could be classified as a *Page 4 
sex offender.[1] Thereafter, Messmer entered an admission to gross sexual imposition. After Messmer entered his admission, the juvenile court inquired whether he understood the meaning of "sexual contact," and he stated that he did not. The record reflects that Messmer then briefly consulted his attorney, and then stated that he did understand the meaning of sexual contact. Thereafter, the juvenile court accepted Messmer's admission.
 {¶ 5} In January 2008, the juvenile court proceeded to disposition, committing Messmer to DYS for a minimum period of six months, and up to a maximum period not to exceed his twenty-first birthday. Additionally, the juvenile court classified Messmer as a Tier II sex offender.
 {¶ 6} It is from this judgment that Messmer appeals, presenting the following assignments of error for our review.
 Assignment of Error No. I JUSTIN M.'S ADMISSION TO GROSS SEXUAL IMPOSITION WAS NOT KNOWING,VOLUNTARY, AND INTELLIGENT, IN VIOLATION OF THE FIFTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTIONS 10 AND16 OF THE OHIO CONSTITUTION, AND JUVENILE RULE 29. (OCT. 23, 2007, T.PP.3-11). *Page 5 
 Assignment of Error No. II THE WYANDOT COUNTY JUVENILE COURT ERRED WHEN IT CLASSIFIED JUSTIN M. AS A JUVENILE OFFENDER REGISTRANT BECAUSE IT DID NOT MAKE THAT DETERMINATION UPON HIS RELEASE FROM A SECURE FACILITY, IN VIOLATION OF R.C. 2152.83(B)(1). (JAN. 7, 2008, T.PP. 4-11); (A-7)-(A-13).
 Assignment of Error No. III THE WYANDOT COUNTY JUVENILE COURT ERRED WHEN IT ADJUDICATED JUSTIN M. TO BE A DELINQUENT CHILD IN OCTOBER 2007 BECAUSE AS OF JULY 1, 2007, THERE EXISTED NO STATUTORY AUTHORITY TO CONDUCT SUCH A HEARING OR MAKE SUCH A FINDING. (OCT. 23, 2007, T.PP. 3-15).
 Assignment of Error No. IV THE TRIAL COURT ERRED WHEN IT APPLIED SENATE BILL 10 TO JUSTIN M. AS THE APPLICATION OF SENATE BILL [SIC] TO JUSTIN M. VIOLATES HIS RIGHT TO DUE PROCESS AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE 1 OF THE OHIO CONSTITUTION. (JAN. 7, 2008, T.PP. 4-11); (A-7)-(A-13).
 Assignment of Error No. V THE RETROACTIVE APPLICATION OF SENATE BILL 10 TO JUSTIN M. VIOLATES THE EX POST FACTO CLAUSE OF THE UNITED STATES CONSTITUTION AND THE RETROACTIVITY CLAUSE OF SECTION 28, ARTICLE II OF THE OHIO CONSTITUTION. (JAN. 7, 2008, T.PP. 4-11); (A-7)-(A-13). *Page 6 
 Assignment of Error No. I {¶ 7} In his first assignment of error, Messmer contends that his admission to gross sexual imposition was not knowing, voluntary, and intelligent. Specifically, Messmer argues that the juvenile court failed to comply with Juv. R. 29(D)(2) at his change of plea hearing, in that it failed to advise him of his trial rights or that he would waive those rights by admitting the allegation. We agree.
 {¶ 8} Juv. R. 29(D) provides, in pertinent part:
 The court may refuse to accept an admission and shall not accept an admission without addressing the party personally and determining both of the following:
 (1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admissions;
 (2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing.
 {¶ 9} An admission in a juvenile proceeding, pursuant to Juv. R. 29, is analogous to a guilty plea made by an adult pursuant to Crim. R. 11 in that both require a trial court to personally address the defendant on the record with respect to the issues set forth in the rules. In reSmith, 3d Dist. No. 14-05-33, 2006-Ohio-2788, ¶ 13, citing In reC.K., 8th Dist. No. 79074, 2002-Ohio-1659; In re Royal (1999),132 Ohio App.3d 496, 504; In re Jenkins (1995), 101 Ohio App.3d 177, 179. Both Crim. R. 11 and Juv. R. 29 require the respective courts to make careful *Page 7 
inquires in order to insure that the admission or guilty plea is entered voluntarily, intelligently, and knowingly. Id., citing In re Flynn
(1995), 101 Ohio App.3d 778, 781; In re McKenzie (1995),102 Ohio App.3d 275, 277. "`In order to satisfy the requirements of [Juv. R. 29], the court must address the youth personally and conduct an on-the-record discussion to determine whether the admission is being entered knowingly and voluntarily.'" Id., quoting In re West (1998), 128 Ohio App.3d 356,359. Juv. R. 29(D) also places an affirmative duty upon the juvenile court to personally address the juvenile and determine that the juvenile, and "not merely the attorney, understands the nature of the allegations and the consequences of entering the admission." Id., citingIn re Beechler (1996), 115 Ohio App.3d 567, 571.
 {¶ 10} The best method for assuring compliance with Juv. R. 29(D) is for a court to use the language of the rule, "carefully tailored to the child's level of understanding, stopping after each right and asking whether the child understands the right and knows he is waiving it by entering an admission." In re Miller (1997), 119 Ohio App.3d 52, 58, citing State v. Ballard (1981), 66 Ohio St.2d 473. Although strict compliance with Juv. R. 29(D) is preferred in a juvenile delinquency case, the Supreme Court of Ohio has required only "substantial compliance" with the rule in accepting a juvenile's admission. In reC.S., 115 Ohio St.3d 267, 2007-Ohio-4919, ¶ 113. In the context of juvenile delinquency *Page 8 
proceedings, "[s]ubstantial compliance means that in the totality of the circumstances, the juvenile subjectively understood the implications of his plea." Id. Failure of a juvenile court to substantially comply with Juv. R. 29(D) has a prejudicial effect necessitating a reversal of the adjudication so that the juvenile may plead anew. Id. at ¶ 112;Smith, 2006-Ohio-2788, at ¶ 14, citing In re Doyle (1997),122 Ohio App.3d 767, 772.
 {¶ 11} In State v. Styer, 3d Dist. No. 14-02-12, 2002-Ohio-6273, this Court examined compliance with Juv. R. 29(D). In Styer, a juvenile court advised a defendant of his rights at his adjudication hearing, but failed to alert him that he would waive those rights by entering an admission. This Court stated that:
 The trial court explained what the possible ramifications would be if he admitted the charges, including the types of punishments associated therewith, and what his rights would be if he took the matter to trial, including his right to challenge witnesses and evidence, to remain silent, and to introduce his own evidence. However, Appellant was not informed that if he admitted to the charges he would be losing the mentioned rights associated with trial. Accordingly, since Appellant was not adequately apprised of the consequences of admitting to the charges, his admission was not knowingly made.
Styer, 2002-Ohio-6273, at ¶ 19.
 {¶ 12} Additionally, the Fourth District Court of Appeals discussed timing in conjunction with a juvenile court's compliance with Juv. R. 29 in In re Jones, 4th Dist. No. 99 CA 4, 2000 WL 387727. InJones, a juvenile entered an admission at a hearing without being informed of the nature of the allegations. The State *Page 9 
claimed the juvenile was adequately notified of the nature of the allegations due to a bindover hearing that took place several weeks earlier. The Fourth District rejected this argument for several reasons, including that "[t]he obvious intent of Juv. R. 29(D)(1) is that the juvenile understands the charge at the time he enters his admission ofguilt, not several weeks earlier at a bindover hearing." (Emphasis sic.) Id.
 {¶ 13} In the case before us, the record reflects that, at his arraignment hearing, the juvenile court informed Messmer of his rights if he denied the allegation, including the right to challenge witnesses, subpoena witnesses, and to remain silent. However, the juvenile court never informed Messmer that he would waive these rights if he chose to enter an admission. Additionally, the record reflects that, at his adjudication/change of plea hearing, Messmer was not advised of any of these rights, and was only advised of the potential penalties and sex-offender classification.
 {¶ 14} The State urges this Court to examine both the September 4 Arraignment Hearing and the October 23 Adjudication Hearing in determining whether the juvenile court substantially complied with Juv. R. 29. However, we find the logic of the Fourth Appellate District in Jones to be persuasive. Although Jones addressed Juv. R. 29(D)(1), concerning the nature of allegations, we find that Juv. R. 29(D)(2), concerning rights waived by admission, also requires a juvenile *Page 10 
court to insure a juvenile's understanding at the time he enters hisadmission. Particularly here, where forty-eight days passed between Messmer's arraignment hearing and his adjudication hearing, we find it inappropriate to consider the arraignment hearing in determining whether the juvenile court substantially complied with Juv. R. 29(D).
 {¶ 15} Moreover, even if we found it proper to consider the arraignment hearing in our analysis, the dialogue at the arraignment hearing was still inadequate under Styer, supra. As in Styer, the juvenile court informed Messmer what his rights would be if he denied the allegation; however, the juvenile court never informed him that he would be waiving these rights if he entered an admission to the allegation. As such, the trial court did not sufficiently advise Messmer of the consequences of entering an admission to the allegation. SeeStyer, 2002-Ohio-6273, at ¶ 19. Consequently, we find that his admission was not knowingly made.
 {¶ 16} Accordingly, we sustain Messmer's first assignment of error.
 Assignments of Error Nos. II, III, IV, V {¶ 17} In his second, third, fourth, and fifth assignments of error, Messmer argues, respectively, that the juvenile court erred when it classified him as a juvenile sex offender at the time of disposition instead of upon his release from custody; that the juvenile court had no statutory authority to adjudicate him a delinquent child; that the juvenile court erred when it applied Senate Bill 10 to him; *Page 11 
and, that the retroactive application of Senate Bill 10 violates the ex post facto clause.
 {¶ 18} Due to our disposition of Messmer's first assignment of error, we find the second, third, fourth, and fifth assignments of error to be moot and decline to address them. App. R. 12(A)(1)(c).
 {¶ 19} Having found error prejudicial to the appellant herein, in the particulars assigned and argued in his first assignment of error, we reverse the judgment of the juvenile court and remand for further proceedings consistent with this opinion.
Judgment Reversed and Cause Remanded.
 PRESTON and WILLAMOWSKI, J.J., concur.
[1] We note that the October 23, 2007 Judgment Entry regarding this hearing states that "[t]he Court advised the Juvenile of his Constitutional rights; of his rights under the Fifth Amendment to the Constitution of the United States; of the penalties and fines possible; of the pleas available to him; and of the hearing procedures herein." *Page 1